IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-116-D-20

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>DERRICK TYRONE INGRAM, )<br>)<br>Defendant. ) | **ORDER** |

On May 7, 2021, Derrick Tyrone Ingram ("Ingram" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 1570]. On July 15, 2021, Ingram, through counsel, filed a memorandum in support [D.E. 1584]. On July 29, 2021, the government responded in opposition [D.E. 1587]. As explained below, the court denies Ingram's motion.

I.

On June 20, 2017, pursuant to a plea agreement, Ingram pleaded guilty to conspiracy to distribute and possess with intent to distribute a quantity of cocaine and a quantity of cocaine base (crack). See [D.E. 563, 566, 1366]. On October 13, 2017, the court held Ingram's sentencing hearing. See [D.E. 758, 1367]. The court adopted the facts set forth in the Presentence Investigation Report ("PSR"), and calculated Ingram's advisory guideline range to be 151 to 188 month's imprisonment based on a total offense level 29 and criminal history category VI. See PSR [D.E. 730] ¶ 67; Sent. Tr. [D.E. 1367] 2–5. After granting the government's downward departure motion and considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Ingram to 114

months' imprisonment. See Sent. Tr. at 18–24; [D.E. 775]. Ingram did not appeal.

On October 9, 2018, Ingram moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his 114-month sentence. See [D.E. 1234]. On August 8, 2020, Ingram the court dismissed Ingram's section 2255 motion and denied a certificate of appealability. See [D.E. 1526].

On May 7, 2021, Ingram moved for compassionate release. See [D.E. 1570]. On July 29, 2021, the government responded in opposition. See [D.E. 1587].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the

2

safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

         (I) suffering from a serious physical or medical condition,

         (II) suffering from a serious functional or cognitive impairment, or

         (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section]

---

percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motion for compassionate release, Ingram states that he has satisfied the exhaustion requirement. See [D.E. 1570] 8, 14; [D.E. 1584] 4–5. On May 6, 2020, Ingram applied to the warden for compassionate release. See [D.E. 1570-1] 1. The warden denied Ingram's request. See id. at 2. The government has not invoked section 3582's exhaustion requirement. Cf. United States v. Muhammad 16 F.4th. 126, 130 (4th Cir. 2021). Accordingly, the court addresses Ingram's motion on the merits.

Ingram seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Ingram cites the COVID-19 pandemic, his health conditions, non-retroactive changes concerning certain guidelines, his rehabilitative efforts, and his release plan. See [D.E. 1570, 1584].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional

5

facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Ingram argues that his hypertension and weight place him at heightened risk of serious infection from COVID-19. See [D.E. 1584] 11–14; [D.E. 1593] 2–4. Ingram cites studies about the spread of COVID-19 spread in prison and the risk factors for serious COVID-19 infection. See [D.E. 1584] 6–10.[2] Ingram, however, is fully vaccinated against COVID-19. See [D.E. 1588] 28–30; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19). Being fully vaccinated reduces Ingram's risk of serious infection. Accordingly, reducing Ingram's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Ingram's health conditions, his difficulty managing his weight, non-retroactive changes concerning the guidelines, his efforts at rehabilitation, and his release plan are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to

---

[2] Ingram also argues that he is unable to control his weigh in prison, especially with the COVID-19 related restrictions. See [D.E. 1584] 11–12. It is not clear that being overweight and "dangerously close to being obese" qualifies as a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" apart from being a risk factor for serious COVID-19 infection. [D.E. 1593] 2; U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Regardless, the court has considered this information under its "other reasons" analysis.

6

a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Ingram being fully vaccinated diminishes the risk associated with COVID-19. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Ingram's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Ingram is 38 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute a quantity of cocaine and a quantity cocaine base (crack). See [D.E. 775]. He participated in a large scale drug distribution network after two previous drug trafficking felonies. See PSR ¶¶ 9–10, 22–23. Ingram also obstructed justice, providing a trooper with a false name when pulled over and then leading the trooper on a dangerous high speed chase through a residential area before crashing in a field. See id. ¶ 10. At the age of 34, when the court sentenced him for this conviction, Ingram was a career offender with a troubling criminal history. See id. ¶ 28. He has convictions for simple assault, injury to personal property (two counts), communicating threats, larceny, felony possession with intent to sell and deliver cocaine near a child care center, felony possession with intent to sell and deliver a schedule II controlled substance, and possession of marijuana paraphernalia. See id. ¶¶ 17–24. Ingram has performed poorly on probation and supervision. See id. ¶¶ 14–17. He repeatedly violated his probation and supervision and committed several new offenses while he was on probation or supervision. See id. ¶¶ 20, 22–23.

Ingram has made some positive efforts while incarcerated. He has completed programing, including a vocational program in culinary arts. See [D.E. 1570] 2–3; [1587] 20; [D.E. 1587-2] 1. He also has a job as a culinary arts worker in the facility. See [D.E. 1570] 2–3; [1587] 20; [D.E.

1584-2] 1. Ingram has satisfied his financial obligations to the court. See [D.E. 1584-2] 2. He has one infraction for possessing drugs/alcohol in 2019. See id.

The court must balance Ingram's rehabilitation efforts and misconduct in prison with his serious criminal conduct, his concerning criminal history, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Ingram's potential exposure to COVID-19, his medical conditions, his rehabilitative efforts, his release plan, and the non-retroactive legal changes concerning certain guidelines since Ingram was sentenced. The court recognizes that Ingram plans to live with his grandmother and to help support his children if released. See [D.E. 1570] 147. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Ingram's arguments, the government's persuasive response, the need to punish Ingram for his serious criminal behavior, to incapacitate Ingram, to promote respect for the law, to deter others, and to protect society, the court denies Ingram's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Ingram's request for home confinement, see [D.E. 1584] 21–22, Ingram seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the

8

Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Ingram requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Ingram's request for home confinement.

### III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 1570], and DISMISSES defendant's request for home confinement [D.E. 1570].

SO ORDERED. This 21 day of December, 2021.

JAMES C. DEVER III
United States District Judge